**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **ANGEL HERNANDEZ,** | ) | |
| **ID # 73104-079,** | ) | |
| Movant, | ) | **No. 3:12-CV-1716-B-BH** |
| vs. | ) | **No. 3:08-CR-0268-B (01)** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| Respondent. | ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to Special Order 3-251, this case has been automatically referred for findings, conclusions, and recommendation.  Based on the relevant findings and applicable law, the *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody*, filed June 4, 2012 (doc. 2), should be **DENIED** with prejudice.

**I.  BACKGROUND**

Angel Hernandez (Movant) challenges his federal conviction and sentence in Cause No. 3:08-CR-268-B.  The respondent is the United States of America (Government).

**A.**     **Plea and Sentencing**

On September 3, 2008, movant and ten co-defendants were charged by indictment with conspiracy to possess with intent to distribute and distribution of a controlled substance in violation of 21 U.S.C. § 846 (count one) and money laundering in violation of 18 U.S.C. § 1956 (count two). (*See* Indictment).  Movant made his initial appearance before a magistrate judge on September 16, 2008. (doc. 6).[1]  After three continuances, on September 3, 2009, he pled guilty without a plea agreement to the drug conspiracy charged in count one of the indictment.  (*See* doc. 312).  He also signed an amended factual resume admitting facts sufficient to support his plea.  (doc. 239).

---

[1]     All document numbers refer to the docket number assigned in the underlying criminal action.

Prior to sentencing, the probation office prepared a presentence report (PSR) that calculated Movant's total offense level as 43 (after a three-level downward departure for acceptance of responsibility), with a resulting guideline range of life imprisonment. (PSR ¶¶ 32, 41, 84). Defense counsel made several objections to the PSR, including objections to a two-level increase for possession of firearms and a four-level increase for being an organizer or leader of criminal activity. He also objected that it did not reduce Movant's sentencing range by two levels under the "safety valve" in § 5C1.2 of the federal sentencing guidelines. (doc. 334 at 48-49).

At the forfeiture and sentencing hearing on February 25, 2010, the Court overruled the objection to the firearm enhancement and found Movant ineligible for the safety valve reduction, but it sustained the objection to the leader/organizer enhancement. It then found Movant's offense level to be 39, with a sentencing guideline range of 262 to 327 months. (doc. 313 at 85-92). The Court sentenced Movant to 262 months of imprisonment, to be followed by five years of supervised release. (docs. 313 at 98-99, doc. 303). Movant filed a direct appeal in which he challenged only the order of forfeiture. *See United States v. Hernandez*, No. 10-10194 (5th Cir. April 6, 2011).

**B.    Substantive Claims**

In his motion, received on June 4, 2012, and a memorandum in support received on September 18, 2012,[2] Movant asserts the following claims:

(1)    his attorney was ineffective by failing to move for dismissal of the indictment based on violations of the Speedy Trial Act and for failing to raise this issue on appeal (ground one);

(2)    his attorney was ineffective by failing to seek to suppress evidence which was

---

[2] Movant filed a memorandum in support of his § 2255 motion on September 18, 2012, that was stricken by the Court because it exceeded the page limit established by the local rules. (*See* docs. 3, 18.) Even if considered, the memorandum would not affect the findings and recommendation.

2

>    obtained from the placement of a GPS device on movant's vehicle (ground two);
>
> (3)   his attorney was ineffective for failing to object to sentence enhancements for importing drugs from Mexico and for the possession of firearms and for failing to raise these issues on direct appeal (grounds three and four); and
>
> (4)   his attorney was ineffective for permitting movant's sentencing hearing to continue after it became apparent that the district judge had confused movant with another defendant with the same last name, and this error prevented movant from receiving a downward departure in sentence (ground five).

The Government filed a response brief on October 4, 2012. (*See* Resp. Opp'n Mot. (Resp.)). Movant filed a reply brief on October 29, 2012. The Government filed a notice of supplemental authority on January 4, 2013, and Movant filed a response on March 1, 2013, seeking to have the Government's response stricken and habeas relief granted.

## II. SCOPE OF RELIEF AVAILABLE UNDER § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (citations and internal quotation marks omitted). It is well established that "a collateral challenge may not do service for an appeal." *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (*en banc*) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).

A failure to raise a claim on direct appeal may procedurally bar an individual from raising the claim on collateral review. *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001). Defendants may only collaterally attack their convictions on grounds of error omitted from their direct appeals upon showing "cause" for the omission and "actual prejudice" resulting from the error. *Shaid*, 937 F.2d at 232. However, "there is no procedural default for failure to raise an ineffective-assistance claim on direct appeal" because "requiring a criminal defendant to bring [such] claims on

3

direct appeal does not promote the[] objectives" of the procedural default doctrine, "to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 503-04 (2003). The Government may also waive the procedural bar defense. *Willis*, 273 F.3d at 597.

### III. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

In his five claims, Movant asserts that trial counsel was ineffective. The Sixth Amendment to the United States Constitution provides in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI. The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his or her defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The *Strickland* test applies when a prisoner alleges denial of effective assistance of counsel in the context of a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985).

When a prisoner challenges his plea based on ineffective assistance of counsel, the "prejudice" requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 58. To satisfy this requirement in the plea context, the prisoner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* To show prejudice in the sentencing context, the movant must demonstrate that the alleged deficiency of counsel created a reasonable probability that his sentence would have been less harsh. *See Glover v. United States*,

4

531 U.S. 198, 200 (2001) (holding "that if an increased prison term did flow from an error [of counsel] the petitioner has established *Strickland* prejudice"). The second prong of *Strickland* is not satisfied by mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations are also insufficient to obtain relief under § 2255. *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989); *United States v. Daniels*, 12 F. Supp. 2d 568, 575-76 (N.D. Tex. 1998); *see also Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding").

**A.     Speedy Trial Act**

In his first ground for relief, Movant claims that his trial counsel was ineffective for failing to seek dismissal of the indictment based on violations of the Speedy Trial Act.

The Speedy Trial Act provides that when a defendant pleads not guilty, trial shall commence within seventy days either from the date the indictment was filed or the date of his first appearance in court, whichever date is later. *See* 18 U.S.C. § 3161(c)(1). A delay resulting from a continuance granted at the request of either party based on the finding that the ends of justice outweigh the interest in a speedy trial is excludable from this seventy-day time period, however. Factors to be considered in determining whether to grant such a continuance include whether the failure to grant the continuance would result in a miscarriage of justice, or whether the case is so unusual or complex due to the number of defendants and the nature of the prosecution and facts or law that seventy days is an unreasonably short time for adequate trial preparation. *See* § 3161(h)(7)(A), (B).

The Supreme Court has stated that while the best practice is for a court to make its findings supporting an ends-of-justice continuance when the continuance is granted, these findings must be

put on the record at the very least when a defendant moves to dismiss the indictment under the Speedy Trial Act. *Zedner v. United States*, 547 U.S. 489, 506-07 (2006). If a defendant is not brought to trial within the time limit required by § 3161(c), as extended by § 3161(h), the indictment shall be dismissed upon motion of the defendant. The indictment may be dismissed with or without prejudice based on the seriousness of the offense, the facts and circumstances that led to the dismissal, and the impact of a re-prosecution on the administration of justice. *See* 18 U.S.C. § 3162(a)(2).

As noted, Movant was indicted on September 3, 2008, and made his first appearance before a magistrate judge on September 16, 2008. Trial was initially set for November 24, 2008. (doc. 66). On October 2, 2008, the Government moved for a continuance until February of 2009, based on the complex nature of the case, and Movant's counsel did not oppose the motion. (doc. 104). The Court granted this motion "pursuant to 18 U.S.C. § 3161(h)(8)(A) and (B)(ii)" and rescheduled trial for March 9, 2009. (doc. 113). On February 10, 2009, two of Movant's co-defendants requested a sixty-day continuance that was unopposed by Movant's counsel, because plea negotiations were ongoing. The motion requested that this sixty days be considered excludable under the Speedy Trial Act because the interests of justice outweighed the interests of the public and defendants in a speedy trial. (doc. 158). The Court granted the continuance and reset the trial for June 8, 2009. (doc. 164). Finally, on May 12, 2009, the Government filed an agreed motion for continuance based on the complexity of the case, including multiple wire intercepts and the fact that one of the co-defendants had not been located until the month before. (doc. 194). The Court granted this motion "pursuant to 18 U.S.C. § 3161(h)(8)(A) and (B)(ii)" and reset trial for September 21, 2009.

Movant asserts that the three continuances are not excludable under § 3161(h) because the

Court's orders granting the motions do not sufficiently state reasons for finding that the ends of justice are served by granting the continuances. (Am. Mem. at 4-9). In two of the orders, the Court specifically cited to the portion of the Speedy Trial Act that permits continuances when the ends of justice are met. In the third, the Court granted the continuance based on the reasons given by the parties, who sought the continuance based on this same language. The record is therefore clear that the parties intended to have the additional time resulting from the continuances excluded from the Speedy Trial Act calculations. Additionally, counsel cannot be considered deficient for failing to file a motion to dismiss on this basis because, as the Supreme Court made clear in *Zedner*, the Court could have made the requisite findings upon the filing of the motion to dismiss.

Furthermore, Movant cannot establish prejudice. Even if his attorney had filed a motion to dismiss the indictment based on the Speedy Trial Act that was granted, he has failed to establish by a preponderance of the evidence that the dismissal would have been with prejudice. Movant's attorney did not oppose any of the motions and specifically agreed to one of them, and one of the motions was filed by two of Movant's co-defendants. He has not shown that the Court would likely have punished the Government for any violation of the Speedy Trial Act by dismissing the indictment with prejudice, especially given the seriousness of the offenses charged. Movant has not shown that counsel was ineffective for failing to seek dismissal of the indictment under the Speedy Trial Act.

**B.     Motion to Suppress**

In his second ground for relief, Movant asserts that trial counsel was ineffective by failing to move to suppress evidence obtained by the placement of a GPS device on his vehicle without a search warrant. He cites *United States v. Jones*, 132 S.Ct. 945 (2012), in which the Supreme Court

held that the placement of a GPS on a vehicle constitutes a search under the Fourth Amendment. (Mem. at 10-13).

*Jones* was handed down almost two years after Movant pled guilty, and over three years after the warrantless search occurred. Under *Strickland*, a counsel's performance must be assessed in light of the circumstances at the time, not through hindsight. *See Strickland*, 466 U.S. at 689. Furthermore, the Fifth Circuit recently affirmed the denial of a motion to suppress evidence obtained through a GPS tracking device placed on a vehicle without a warrant because "[s]earches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule." *United States v. Andres*, 703 F.3d 828, 834 (5th Cir. 2013), *quoting Davis v. United States*, 131 S.Ct. 2419 (2011). Because warrantless GPS tracking was permissible under Fifth Circuit precedent in December of 2009, when agents obtained evidence from a GPS tracking device placed on Andres' vehicle, the Fifth Circuit found that the district court did not err in refusing to suppress the evidence. *Andres*, 703 F.3d at 835.

Likewise, when the agents in Movant's case obtained evidence from a GPS tracking device, it was objectively reasonable for them to believe that warrantless tracking was permissible under existing Fifth Circuit precedent. The search was therefore not subject to the exclusionary rule, and counsel was not ineffective for failing to move to suppress this evidence. *See Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995) ("Counsel cannot be deficient for failing to press a frivolous point.").

**C.**     **Objections to PSR**

Movant asserts in his third ground for relief that counsel was ineffective for failing to object to certain enhancements to his sentence in the PSR.

8

*1. Importation*

Movant contends that that counsel failed to object to a two-level enhancement to his sentence because the offense involved the importation of methamphetamine from Mexico. The PSR included a two-level enhancement to Movant's sentencing guideline range pursuant to § 2D1.1(b)(5) of the federal sentencing guidelines because the offense involved the importation of methamphetamine into the United States.[3] Movant contends that this enhancement was unwarranted, and therefore counsel was ineffective for failing to object to it, because he did not know that the drugs were from Mexico. (Am. Mem. at 13-14).

A PSR generally "bears sufficient indicia of reliability, such that a sentencing judge may consider it as evidence in making the factual determinations required by the Sentencing Guidelines." *United States v. Huerta*, 182 F.3d 361, 364 (5th Cir. 1999). While "a district court must resolve disputed issues of fact if it intends to use those facts as a basis for sentencing, the court can adopt facts contained in a PSR without inquiry, if those facts ha[ve] an adequate evidentiary basis and the defendant does not present rebuttal evidence." *Id.* (quoting *United States v. Puig-Infante*, 19 F.3d 929, 943 (5th Cir. 1994)). Furthermore, "[a] defendant's rebuttal evidence must demonstrate that the information contained in the PSR is 'materially untrue, inaccurate or unreliable,' and '[m]ere objections do not suffice as competent rebuttal evidence.'" *Id.* (quoting *United States v. Parker*, 133 F.3d 322, 329 (5th Cir. 1998)).

Movant chose not to testify at his sentencing hearing (doc. 313 at 71) and therefore did not present evidence to rebut the facts set forth in the PSR that he and his co-defendant were

---

[3] The relevant section of the sentencing guidelines at the time Movant's PSR was prepared, and at sentencing, was § 2D1.1(b)(1). (*See* PSR ¶ 35).

9

instrumental in transporting methamphetamine and cocaine from Mexico into the United States and smuggling drug proceeds into Mexico. (PSR ¶¶ 6, 7, 9). The Fifth Circuit has also specifically held that the defendant's actual knowledge that the methamphetamine was imported into the United States is not required for purposes of this enhancement. Its application is appropriate where there is evidence that the offense involved the importation of the drug. *See United States v. Serfass*, 684 F.3d 548, 552 (5th Cir. 2012). Movant himself acknowledges that there was evidence that the drugs were imported from an unindicted co-conspirator in Mexico. (Am. Mem. at 14). Counsel was therefore not ineffective for failing to object to this enhancement.[4] *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) (failure to raise a meritless objection is not ineffective assistance).

   *2.     Firearms*

Movant next asserts that his attorney was ineffective for failing to object to the enhancement for possession of firearms and for failing to argue that, notwithstanding this enhancement, he was still eligible for a reduction in his sentence below the minimum ten-year sentence pursuant to the safety valve provision of § 5C1.2(a)(2) of the federal sentencing guidelines. (Am. Mem. at 16-19, Reply at 8-12).

Movant presents an affidavit stating that he did not know that there were firearms at the home where the drugs were stored because it was his co-defendant girlfriend's house, and he never lived there. It also states that while he knew there were firearms at the house that was listed in his name,

---

[4] Movant also asserts that the prosecuting attorney assured him that "the enhancement for knowing that the methamphetamines I was charged with were from Mexico would be dropped" and points to his amended factual resume that deleted any reference to a drug source in Mexico as supporting evidence. (Am. Mem. at 14, Ex. 1). Movant does not assert that the Government breached any plea agreement because he did not plead guilty pursuant to a plea agreement. He also acknowledged when he pled guilty that he understood that no one could promise him how the sentencing guidelines would apply in his case. (doc. 312 at 5-6). The fact that the prosecuting attorney and defense counsel were willing to sign an amended factual resume that deleted reference to Movant purchasing the drugs from a source in Mexico does not establish either ineffective assistance of counsel or a breach of any promise.

those firearms did not belong to him, and the offense did not occur at that address. (Mot. Ex. A).

Contrary to Movant's assertion, his attorney did object to this enhancement on the basis that the firearms were not involved. (Objections to PSR ¶ 12, doc. 334 at 48). The addendum to the PSR in response to this objection noted evidence that multiple firearms were found at both houses, i.e., the girlfriend's house where the drugs were stored and distributed, and the house in his name where he and his co-defendant were observed on multiple occasions, and where over $2000 in cash and white crystal and green leafy substances were located. (Addendum at PSR at 2-3, 7). The addendum also noted that the enhancement should be applied unless it is clearly improbable that the weapon was connected with the offense. *Id.* at 7. At Movant's sentencing hearing, the Court overruled the objection and adopted the PSR with respect to this issue. (doc. 313 at 84-6).

As noted earlier, Movant stated on the record that he did not want to testify at his sentencing hearing, that his attorney was not forcing him not to testify, that it was completely his decision, and that no one had pressured him to make this decision. (doc. 313 at 71). Although he now avers that he either did not know that the firearms existed or did not own the firearms, he does not demonstrate how his attorney could have presented this evidence without his testimony. Movant has also not demonstrated that had he testified at his hearing, his self-serving testimony would have been credited over the testimony of the agent that the firearms assisted Movant with his drug activity, or over evidence that the firearms at his girlfriend's house were recovered along with more than four kilograms of methamphetamine, scales, cellular telephones, and numerous financial records. In particular, § 2D1.1 provides for a two-level enhancement if a firearm is possessed and the Government can establish personal possession of a dangerous weapon "by showing a temporal and spatial relationship of the weapon, the drug trafficking activity, and the defendant." *United States*

11

*v. Zapata–Lara*, 615 F.3d 388, 390 (5th Cir.2010). There was evidence of a both a temporal and spatial relationship between Movant, the weapons, and the drug trafficking activity, and his self-serving affidavit is insufficient to counter this evidence.

The Government may also prove vicarious possession "when another individual involved in the commission of an offense possessed the weapon ... [and] the defendant could have reasonably foreseen that possession." *Id*. Here, Movant acknowledges that the location where the drugs were stored was owned by his co-defendant girlfriend. (Mot. Ex. A). Movant has not shown that there is any rebuttal evidence that his attorney should have presented in either his objections, or at the sentencing hearing, that would have shown that his co-defendant girlfriend's possession of multiple firearms would not have been *reasonably foreseen* by him and that the PSR is therefore untrue, inaccurate, or unreliable.

Finally, while Movant asserts that he was eligible for a safety valve reduction even with the two-level enhancement for possession of a firearm, the Fifth Circuit has held otherwise. *See United States v. Myers*, 150 F.3d 459, 465 (5th Cir. 1998) ("We therefore affirm the two-level firearm enhancement and necessarily affirm the district court's finding that Myers was not eligible for the "safety valve" provision of U.S.S.G. § 5C1.2(2)."); *United States v. Flucas*, 99 F.3d 177, 178-79 (5th Cir. 1996). Counsel therefore did not err in acknowledging at sentencing that the firearm enhancement made movant ineligible for the safety valve reduction.

Movant's claims of ineffective assistance of trial counsel with respect to objections to the PSR should be denied.

### D. **Alleged Misidentificaton**

In his fifth ground for relief, Movant asserts that his attorney provided ineffective assistance

12

when he permitted the sentencing hearing to continue after the Court allegedly confused him with another defendant with the same last name, and that he was prejudiced by this alleged confusion because the Court then refused to grant his motion for a downward departure in sentencing. (Am. Mem. at 19-24).

Movant's forfeiture and sentencing hearings were held at the same time on February 25, 2010. After hearing testimony from three witnesses and admitting several exhibits on the issue of forfeiture (doc. 313 at 10-69), the Court granted the government's motion for a preliminary order of forfeiture of Movant's house and the firearms found in it (*id*. at 77-80). The Court then turned to the sentencing issue, speaking to Movant about his decision not to testify, acknowledging receipt of letters from his sister and daughter, and hearing argument about the firearms found at his house. (*Id*. at 83-86). The Court sustained defense counsel's objection to the four-level enhancement included in the PSR for being an organizer or leader after hearing argument about the fact that both Movant and his girlfriend led the organization, that Movant's brother was also involved, and that eleven others had either pled guilty or been found guilty. (*Id*. at 86-90). The Court then heard argument regarding the motion for downward departure based on Movant's lack of prior criminal history and other factors (*see* doc. 295) and a statement of remorse from Movant. It acknowledged his sisters, daughter, niece and son-in-law in the courtroom, as well as a "nice letter" from his daughter. The Court referred to the criminal organization as the "Banegas group" and "this Banegas organization." (*Id*. at 91-96). Sometime after sentencing Movant, the Court acknowledged its error in stating that Movant was part of the "Banegas organization" and affirmed its knowledge that he was part of the Hernandez organization. It noted its familiarity with the details of the offense and Movant's role and stated that it would not grant him a downward departure because it did not find

13

that there was substantial cooperation justifying a lower sentence. (*Id*. at 103-104.)

Movant asserts that his attorney's failure to object to the references to the Banegas organization during his sentencing prejudiced him because he was denied a downward departure based on the Court's false belief that he was part of another, much larger, drug conspiracy. (Am. Mem. at 20-21). He characterizes the correction on the record merely as a "failed attempt at salvaging" his sentencing proceeding. He contends that he was the first member of his organization to be sentenced, and that the Court was confusing his organization with the Banegas one when it stated on the record that nobody from the organization was interested in assisting the government. (Am. Mem. at 22-23). Movant has also submitted an affidavit stating that he told his attorney of the error during the hearing, but his attorney told him quietly not to call attention to it because it could be useful as potential error on appeal. (Mot., Ex. A).

Movant has failed to establish either deficiency or prejudice with regard to this claim. He has not shown that the Court mistook him for another defendant, only that it misspoke. He does not, and cannot credibly, assert that the Court was confused about his identity during the lengthy forfeiture hearing concerning his house and the firearms found in it, the method by which he paid for the house, and income he had earned other than from drug proceeds. He likewise does not assert that the Court was confused about his identity when it sustained counsel's objection to the leader/organizer sentencing enhancement, acknowledged the lack of criminal activity in his past, or acknowledged his family and its support of him. He claims that it was confused only at the very end of the lengthy proceedings and only with respect to the issue of whether he was entitled to a further downward departure. This contention is not credible. As for his claim that the Court was confused about the level of cooperation from his co-defendants because they had not yet been sentenced and

was therefore confusing two criminal organizations, Movant's PSR clearly states that nine of movant's ten co-defendants had pled guilty by the time his PSR was completed, three had already been sentenced, and five had sentencing dates scheduled. (PSR at 3-5). By the time of Movant's sentencing, the Court was well aware of his level of cooperation and that of his co-defendants. The record reflects that Court misspoke during the hearing and corrected its error, and it then again explained why it had not granted Movant a further downward departure in sentencing.

Furthermore, Movant's affidavit reflects that counsel made the strategic decision not to mention the misstatement on the record in the belief that this might constitute error on appeal. This cannot be considered deficient representation and did not prejudice Movant because the Court would simply have corrected the error earlier if defense counsel had called attention to it. The Court clearly stated on the record that a life sentence calculated in the PSR was too long, it sustained counsel's objection to a four-level enhancement, and it sentenced Movant at the very bottom of the new sentencing range. The reasons for failing to grant him a further downward departure in his sentence were clearly stated on the record. Movant's claims of ineffective assistance of trial counsel are without merit and should be denied.

## IV. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Movant asserts his appellate counsel, who also represented him during his plea and sentencing, was ineffective for failing to raise on appeal his Speedy Trial claim, the Court's rulings on objections to the PSR, and the misstatement at sentencing.

The Constitution also guarantees a criminal defendant the effective assistance of counsel on appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Whether appellate counsel has been ineffective is also determined by using the standard in *Strickland v. Washington*, 466 U.S. 668 (1984). Under

15

*Strickland*, petitioner must show a reasonable probability that but for his counsel's deficient representation, he would have prevailed on his appeal. *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001).

To render effective assistance of counsel, appellate counsel need not raise every non-frivolous issue on appeal. *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). "Instead, to be deficient, the decision not to raise an issue must fall 'below an objective standard of reasonableness.'" *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000) (quoting *Strickland*, 466 U.S. at 688). "[A] reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful. Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." *Williamson*, 183 F.3d at 462-63 (footnote and citations omitted). To determine whether appellate counsel was deficient, courts must consider whether the challenge "would have been sufficiently meritorious such that [counsel] should have raised it on appeal." *Phillips*, 210 F.3d at 348.

With regard to the failure to raise a Speedy Trial claim, a defendant who fails to move for dismissal of the indictment based on a violation of that Act prior to trial or the entry of a guilty plea waives the right to a dismissal on that basis. *See* 18 U.S.C. § 3162(a)(2). Any claim raised on direct appeal would not have succeeded for this reason. With regard to the failure to raise the rulings on objections and the judge's misstatement on direct appeal, Movant has included a copy of a letter from his attorney explaining that he did not raise any alleged sentencing error on direct appeal because he could not locate any law supporting any claim that the sentence was unreasonable or illegal. (Mot., Ex. G). Movant has failed to establish prejudice because he has not shown that he would have prevailed on any sentencing issue on direct appeal, given that the PSR had a sufficient

16

evidentiary basis, he presented no rebuttal evidence at his sentencing hearing, and the Court corrected the misstatement on the record. Appellate counsel was not ineffective for failing to raise these issues on appeal, and Movant's claims of ineffective assistance of appellate counsel should be denied.

## V.  GOVERNMENT RESPONSE

Movant also asserts that the Government's response should be stricken and that habeas relief should be granted because it did not file copies of the indictment, the plea, the judgment, the factual resume, and the PSR, and because it did not present evidence to contradict his affidavits.

Because all of these documents are publicly available through the Court's electronic filing system, additional certified copies were not required and were not ordered. (*See Order and Instructions to Parties in a Motion Under 28 U.S.C. § 2255*, doc. 6 in No. 3:12-cv-1716-B). Movant's other complaints about the Government's response are simply additional arguments in support of his claims. He has not shown cause for the Government's response to be stricken or for habeas relief to be granted in this case.

## VI.  EVIDENTIARY HEARING

An evidentiary hearing appears unnecessary based on the motion to vacate and the files and records of this case. No evidentiary hearing is required when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. Here, the record conclusively shows that Movant is entitled to no relief.

## VII.  RECOMMENDATION

The *Motion to Vacate, Set Aside, or Correct Sentence* pursuant to 28 U.S.C. § 2255 should be **DENIED** with prejudice.

**SIGNED this 5th day of June, 2013.**

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE